UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CAROL TREIBER; LESLIE TALMAN; LORI
SLAUTER; RODNEY HERRING; PATRICIA
HUDDLESTON; CARL DORSEY; IRENE EVERS;
KATHRYN HOVLAND; ISABELLE REALI;
GERALDINE LANGFORD; and TROY FULWOOD,
On Behalf of Themselves and All Others Similarly
Situated,

Plaintiffs,

   -v-                             3:12-CV-1565

ASPEN DENTAL MANAGEMENT, INC.; ADMI
CORPORATION; ADMI HOLDINGS L.P.; ROBERT
A. FONTANA; LEONARD GREEN & PARTNERS;
L.P.; GREEN EQUITY INVESTORS V, L.P.; GREEN
EQUITY INVESTORS SIDE V, L.P.; and LGP SMILE
COINVEST LLC,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

NEWMAN FERRARA, LLP                             JEFFREY M. NORTON, ESQ.
Attorneys for Plaintiffs                        RANDOLPH M. MCLAUGHLIN, ESQ.
1250 Broadway
27th Floor
New York, NY 10001

COHEN LAW GROUP PC                              BRIAN S. COHEN, ESQ.
Attorneys for Plaintiffs
10 East 40th Street
46th Floor
New York, NY 10016

HISCOCK & BARCLAY LLP                           GABRIEL M. NUGENT, ESQ.
Attorneys for Defendants Aspen Dental
   Management, Inc. & Robert A. Fontana
One Park Place

300 South State Street
Syracuse, NY 13202

FRENCH ALCOTT, PLLC                          DANIEL J. FRENCH, ESQ.
Attorneys for Defendants Aspen Dental
   Management, Inc. & Robert A. Fontana
300 South State Street
Syracuse, NY 13202

KING & SPAULDING LLP                         GRACIELA M. RODRIGUEZ, ESQ.
Attorneys for Defendants Aspen Dental
   Management, Inc. & Robert A. Fontana
1700 Pennsylvania Avenue, NW
Washington, DC 20006

LATHAM & WATKINS LLP                         JAMES E. BRANDT, ESQ.
Attorneys for Defendants ADMI Corporation;   SARAH M. LIGHTDALE, ESQ.
   ADMI Holdings L.P.; Leonard Green &
   Partners, L.P.; Green Equity Investors V,
   L.P.; Green Equity Investors Side V, L.P.;
   and LGP Smile Coinvest LLC
885 Third Avenue
Suite 1000
New York, NY 10022

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

     Plaintiffs Carol Treiber, Leslie Talman, Lori Slauter, Rodney Herring, Patricia

Huddleston, Carl Dorsey, Irene Evers, Kathryn Hovland, Isabelle Reali, Geraldine

Langford, and Troy Fulwood (collectively "plaintiffs") bring an Amended Complaint against

defendants Aspen Dental Management, Inc. ("Aspen"); Robert A. Fontana ("Fontana");

ADMI Corporation; ADMI Holdings L.P.; Leonard Green & Partners, L.P.; Green Equity Investors V,

L.P.; Green Equity Investors Side V, L.P.; and LGP Smile Coinvest LLC (collectively

"defendants").  Plaintiffs seek injunctive relief and compensatory damages.

- 2 -

Defendants Aspen and Fontana move to dismiss the Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule __") 12(b)(1) or alternatively for failure to state a claim under Rule 12(b)(6). Plaintiffs opposed and Aspen and Fontana replied.

Defendants ADMI Corporation; ADMI Holdings L.P.; Leonard Green & Partners, L.P.; Green Equity Investors V, L.P.; Green Equity Investors Side V, L.P.; and LGP Smile Coinvest LLC move to dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2)[1] and for failure to state a claim under Rule 12(b)(6). Plaintiffs opposed and these defendants replied.

Oral argument was heard in Utica, New York. Decision was reserved.

## II. BACKGROUND

### A. The Parties

Plaintiffs are current and former recipients of dental treatment throughout eleven states at Aspen dental clinics. Plaintiffs all received dental care from licensed dentists employed by the clinic they attended.

Defendant Aspen is a Delaware corporation with its principal place of business in Syracuse, New York.

Defendant Fontana is Aspen's President and Chief Executive Officer, and Chairman of its Board of Directors. Aspen is wholly owned by ADMI Corporation.

---

[1] ADMI Corporation does not contest personal jurisdiction as its principal place of business is in Syracuse, New York. Thus, with respect to the personal jurisdiction argument, the term Holding Company defendants excludes ADMI Corporation.

Defendant ADMI Corporation is a Delaware corporation with its principal place of business in Syracuse, New York.[2]  ADMI Corporation is wholly owned by ADMI Holdings L.P.

Defendant ADMI Holdings L.P. is a Delaware limited partnership with its principal place of business in Los Angeles, California.  Three of the Directors of ADMI Holdings L.P. are John Baumer, Alyse Wagner, and Peter Nolan (also defendant Leonard Green & Partners, L.P. principals).

Defendant Leonard Green & Partners, L.P. is a private equity firm organized under Delaware law and based in Los Angeles, California.  Leonard Green & Partners, L.P. manages, but does not own:  defendants Green Equity Investors V, L.P.; Green Equity Investors Side V, L.P.; and LGP Smile Coinvest LLC.

Defendants Green Equity Investors V, L.P.; Green Equity Investors Side V, L.P.; and LGP Smile Coinvest LLC are also all organized under Delaware law with their principal places of business in Los Angeles, California.[3]  Collectively, these three defendants hold a majority interest in ADMI Holdings L.P.

## B. The Facts

The following facts, taken from the Amended Complaint, are assumed true for purposes of the motions to dismiss.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

---

[2]  Aspen and ADMI Corporation share the same business address in Syracuse, New York.

[3]  Defendants ADMI Holdings L.P.; Leonard Green & Partners, L.P.; Green Equity Investors V, L.P.; Green Equity Investors Side V, L.P.; and LGP Smile Coinvest LLC all share the same business address in Los Angeles, California.

## 1. __Aspen and the Practices__

Aspen holds itself out as a dental services corporation providing integrated business support services to dental care practices around the country (the "Practices").  These services are provided pursuant to Business Service Agreements with owners of the Practices.  The owners of record are licensed dentists.  Among other things, Aspen provides marketing, advertising, benefits administration, accounting, scheduling, patient satisfaction, training, purchasing, insurance processing, and information technology services to the Practices.  As of the date of filing the Amended Complaint, Aspen provides these business services to 376 Practices with locations in twenty five states:  Alabama (1), Arizona (7), Connecticut (17), Florida (29), Georgia (5), Illinois (16), Indiana (29), Iowa (15), Kentucky (9), Maine (8), Massachusetts (28), Michigan (20), Nebraska (4), New Hampshire (10), New York (39), Ohio (42), Oklahoma (4) Oregon (6), Pennsylvania (36), Rhode Island (3), South Carolina (8), Tennessee (17), Vermont (1), Washington (4), and Wisconsin (18).  The Practices collectively serve millions of patients each year.  Aspen purports to allow dentists to focus on providing clinical care to patients while providing the back-end business support that is needed for a dental office to operate smoothly.

According to plaintiffs however, Aspen is actually a giant in the "Corporate Dentistry" industry—an emerging business model in which a corporation runs the business side of a practice and hires licensed dentists as employees and independent contractors.  Plaintiffs allege that Aspen engages in the unlawful corporate practice of medicine through its corporate structure and business model.  They contend that because licensed dentists are employed and controlled by profit-driven, non-professional investors, the pressure to increase production interferes with the dentists' ethical obligations to their patients.  For

example, plaintiffs allege that defendants set and monitor production goals that both dental professionals and non-professional staff must meet in order to keep their jobs and earn bonuses. Further, defendants created a system to automatically add certain procedures to a patient's treatment plan if a dentist or hygienist does not specifically recommend it. This system also prioritizes appointments by profit, as opposed to the needs of patients, wherein appointments are regularly canceled and rescheduled so that patients with more lucrative procedures can be scheduled in their place.

In the New York State, Aspen maintains thirty nine dental Practices, in addition to the following facilities. Aspen's principal executive offices are located at a Practice Support Center (the "Center") in Syracuse, New York. From these offices, Aspen and its Board of Directors and senior management including Fontana set all company-wide operational policies and procedures, and operate, direct, control, and manage the Practices. The Center includes a patient scheduling center which handles more than 70,000 calls monthly and schedules approximately 35,000 new patients a month for appointments at the Practices. The Center also provides the systems and software programs utilized by the Practices, houses all technology support functions for the Practices, originates all marketing and advertising, serves as a centralized denture manufacturing laboratory, and manages nationwide payroll. Aspen also handles accounts payables and receivables for Practices, as well as the purchasing of each local Practice's assets, equipment, and performs all human resource functions for the Practices including recruiting, interviewing, and hiring all dentists and staff.

Plaintiffs contend that Aspen drives revenue and production goals at the expense of patient care. Each local Practice's performance is reviewed on a monthly and year-end

basis, which includes comparison of "budgeted" versus "actual" revenues as well as comparisons on specific treatments and comparison to performers within the top 20%. According to plaintiffs, Aspen's senior management sets performance and sales goals for each Practice based on the previous year's earnings. Aspen also determines a monthly budget that dictates what each Practice is expected to bill based on that Practice's local demographics. Aspen monitors the production of each dentist and exerts pressure on the dentists and Office Managers to hit performance and sales goals.

Further, employees are financially incentivized to provide certain treatments and meet production goals. For example, hygienists are incentivized by Aspen to sell products such as fluoride and Arestin.[4] Office Managers, who play a vital role in the overall performance of each Practice and are responsible for staff management, patient service, and office administration, are also incentivized through a profit-contingent bonus program. They are responsible for ensuring that their Practice meets the targeted goals and blamed if a dentist falls short. The incentives encourage Office Managers to maximize patient turnover while simultaneously minimizing expenses. The profit-based incentive program also encourages Office Managers to bill patients for treatments that were not provided.

Dentists are also incentivized through a profit-contingent bonus program. Aspen's standard contract for an Associate Dentist includes specific goals and incentives based on monthly averages of revenues and deposits. For example, "Level 1 eligibility – Average revenue & deposit must be $10,000 over budgeted goal. If this level is achieved the bonus

---

[4] According to the Amended Complaint, Arestin is "a prescription antibiotic . . . used together with scaling and root planning (SRP) and is placed by your dentist for the treatment of periodontal (gum) disease." Am. Compl. ¶ 90a. (internal quotations omitted).

- 7 -

earned is equal to 1% of the average revenue and deposit for the month." Am. Compl. ¶ 102.

Plaintiffs also allege that Aspen, through its Regional Managers and Office Managers, automatically adds treatments to a treatment plan even if the hygienist or dentist does not add it. According to a former Aspen hygienist, the hygiene treatment program is tightly controlled by the Center in Syracuse and operated in such a way as to automatically pad treatment plans whether or not the treating hygienist or dentist actually recommended the treatment. Another example is Aspen's program whereby each of the soft tissue management ("STM") classifications will cause a treatment to be automatically added to a treatment plan. For example, if a patient is diagnosed as an "STM II," and the hygienist decides not to recommend treatment, the Office Manager can hit a button in the treatment plan and the computer will automatically add treatments to the plan, despite the fact that the necessity of this type of treatment is subjective and at the discretion of the hygienist and/or dentist. All of this can happen at Practices without the instruction of a hygienist or dentist.

Aspen created a "smart scheduling system" ("SSS") which is used at all Practices to ensure that each chair is filled by a patient who will maximize revenue. Aspen expects its dentists to keep two to three chairs active at a time. Chair 1 is the procedure chair and is used for extractions, bridges, crowns, and fillings; Aspen always wants Chair 1 available, as extractions, bridges, and crowns are the most lucrative. Chair 2 is for new patient examinations. Chair 3 is for overflow and follow-up procedures, such as re-cementing of crowns, bridges, denture adjustments, and delivery of permanent dentures. Plaintiffs allege that because patients are billed in full up front, Aspen has no incentive to have a patient return and take up chair time that could otherwise be used to generate revenue.

The SSS schedules patients in an order and frequency that maximizes profits. For example, since extractions, bridges, and crowns are far more lucrative than fillings, the SSS is designed to allow only two fillings per day. Patients that need fillings and other non-lucrative dental services are pushed out over an extended period of time. It is also common Aspen practice to cancel out patients who are scheduled for fillings and replace them with more expensive procedures like extractions and crowns.

Aspen protocol mandates that all new patients undergo a full examination before any other work is done. After the examination by a dentist, but before a cleaning is done, the dentist recommends a treatment plan. Following the examination, the patient then meets with an Office Manager who prepares a treatment plan based on the dentist's recommendation, which often includes add ons such as oral cancer screening and an expensive Rotadent toothbrush. One former Officer Manager stated that she was constantly under pressure to produce and that she was reprimanded for not adding the Rotadent toothbrush. Aspen's software creates a plan and cost estimates for the treatment plan. According to plaintiffs, the average treatment plan sold to new patients at Aspen's top producing local Practices runs approximately $4,450.

All patient billing is handled at the Center in Syracuse. Patients have the option to: pay out of pocket; only undergo procedures covered by insurance; finance all or part of the treatment through CareCredit; or refuse any and all work. Because Aspen bills its patients for the entire cost of the treatment plan before any work is performed, patients are often forced to take out CareCredit cards to finance the procedures. In explaining the CareCredit option to patients, Aspen fails to include the fact that CareCredit offers money and things of value to Aspen to steer patients to finance their procedures with the card. For example,

CareCredit charges Aspen a fee to offer CareCredit financing, and then reimburses part of that fee based on the volume of financing through CareCredit. Further, funds are advanced by CareCredit to Aspen for work not yet performed by Aspen, while charging the patients' accounts for the work.

According to plaintiffs, none of the Practice owners actually own, operate, or control the Practices. They are not actively engaged in the practice of dentistry and do not supervise Aspen personnel at the Practices. Employees are incentivized to act by Aspen's compensation structure and loyalty to the pecuniary interests of the defendants, as opposed to the independent medical judgment of a true dentist-owner. Further, the profits from each Practice are paid to defendants instead of the "owner" dentist.

The Amended Complaint details the ownership and operation of numerous Practices throughout New York State, and in other states. Plaintiffs allege that each of the following Practices is actually owned and controlled by defendants, despite a licensed dentist representing to New York State that the office would be owned, operated, and controlled only by licensed dentists: Judge Dental, PLLC; Anand Dental Health Services, P.C.; Aspen Dental Associate of New York, P.C.; Aspen Dental of Central New York, PLLC; Dental Services of Western New York PLLC; Aspen Dental Associates of Hudson Valley, PLLC; Aspen Dental of Rochester, PLLC, as well as Practices in Tennessee and Oregon. Plaintiffs contend that although in each instance, the corporate formation papers filed with the state represent that individual licensed dentists are the owners, none of these dentists is a true owner. Instead, the ownership is nominal, as defendants operate, and have de facto ownership of and control over, the Practices. In sum, through all of the above detailed

conduct, and more outlined in the Amended Complaint, defendants intentionally engage in the unlawful corporate practice of medicine.

### 2. The Named Plaintiffs

Plaintiffs all received dental care from licensed dentists throughout eleven states at Aspen dental clinics.  Carol Treiber lives in Morris, New York and received dental services at an Aspen Practice in New Hartford, New York.  Leslie Talman lives in West Haven, Connecticut and received dental services at an Aspen Practice in Orange, Connecticut.  Lori Slauter lives in Altoona, Pennsylvania and received dental services at an Aspen Practice in her hometown.  Rodney Herring lives in Bourbonnais, Illinois and received dental services at an Aspen Practice in his hometown.  Patricia Huddleston lives in Rhodes, Michigan and received dental services at an Aspen Practice in Bay City, Michigan.  Carl Dorsey lives in Swansea, Massachusetts and received dental services at an Aspen Practice in Seekonk, Massachusetts.  Irene Evers lives in North Judson, Indiana and received dental services at an Aspen Practice in Valparaiso, Indiana.  Kathryn Hovland lives in Milwaukee, Wisconsin and received dental services at an Aspen Practice in Brookfield, Wisconsin.  Isabelle Reali lives in South Portland, Maine and received dental services at an Aspen Practice in her hometown.  Geraldine Langford lives in Paducah, Kentucky and received dental services at an Aspen Practice in her hometown.  Troy Fulwood lives in Fort Myers, Florida and received dental services at an Aspen Practice in Fort Myers–Cypress Woods, Florida.

Each named plaintiff alleges that he or she saw Aspen's advertisements offering, inter alia, free examinations and x-rays.  These advertisements, in combination with the fact that Aspen accepted some plaintiffs' dental insurance plans, prompted each to visit their local Aspen office.  In each instance, upon arrival at their respective local Practice,

which Aspen represented was owned, operated and controlled by a licensed dentist, each plaintiff was given a brief dental examination and then immediately whisked into the business office by an Office Manager.  The respective Office Managers then persuaded each plaintiff to commit to an extensive treatment plan.  More than half of the plaintiffs allege that they were encouraged by Office Managers to take out a CareCredit card to pay the balance, and did so.  Their new CareCredit card was charged in full before any procedures were performed.

Each plaintiff alleges that in Aspen's marketing and advertising materials, patient forms, and Fontana's public statements, defendants misrepresented to them that the Practice they visited is lawfully licensed and authorized to practice dentistry and, thus, entitled to receive fees for dental services and products, when in fact each Practice is not lawfully authorized to practice dentistry because the owners of record are sham owners and the true owner is Aspen.

### C.  The Claims

The basis for plaintiffs' claims is that Aspen and its affiliates illegally operate dental practices and exploit consumers.  According to plaintiffs, "[t]o perpetuate its fraudulent scheme and lure the unwitting into its dental offices nationwide, Aspen Dental created a facade of legitimacy to deceive everyday people into believing that it is authorized by law to provide dental care."  Pls.' Mem. of Law in Opp'n, 11.  Had plaintiffs known Aspen was not lawfully operated by dentists, they would not have visited the Practices and paid for services.

Plaintiffs contend the Practices are not authorized to perform dental services because they are in fact run by Aspen and its affiliates, in violation of the corporate practice of medicine doctrine.  Further, plaintiffs argue that because Aspen and not the dentists controls

the Practices, and because profits are channeled to defendants, price gouging, billing for services not provided, and billing for products and services without patient consent results.

Plaintiffs bring this as a class action pursuant to Rule 23 on behalf of themselves and the following proposed class and subclass:

> (a) All persons who are or may be harmed by [Aspen's] illegal corporate practice of medicine by virtue of being paying recipients of [Aspen] dental services and products (the "Class"); and

> (b) All persons who were harmed by [Aspen's] illegal corporate practice of medicine after paying for [Aspen] dental services and/or products (the "Subclass").

Am. Compl. ¶ 28. They have not yet moved for class certification.

The Amended Complaint asserts the following four causes of action: (1) seeking a declaration that the Practices are not lawfully licensed and authorized to practice dentistry as they are owned and operated by defendants who are not dentists and are thus not entitled to receive payments for dental services; (2) a violation of New York General Business Law sections 349 and 350 which prohibit deceptive acts or practices (section 349) and false advertising (section 350) in the conduct of any business in New York; (3) breach of the implied covenant of good faith and fair dealing in that Aspen had a duty to exercise good faith and fair dealing when selling dental treatment plans to plaintiffs but breached that duty by engaging in the unlawful corporate practice of medicine; and (4) defendants were unjustly enriched when plaintiffs paid Aspen for services which they reasonably believed they were legally obligated to pay, but defendants were not authorized to accept.

Plaintiffs seek compensatory damages in the amount of all treatments purchased and the following injunctive relief ordered: cessation of the wrongful and deceptive

practices; implementation of administrative changes designed to remedy current and future problems; and improved disclosure to consumers.

Defendants contend the benefits of dental service organizations such as Aspen have been recognized by the Federal Trade Commission, and there is nothing illegal about such an organization.  In fact, they contend Aspen's services result in greater efficiencies and lower costs, which translate into more affordable fees and allow dentists at the Practices to focus on patient care instead of running a business.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)—Subject Matter Jurisdiction

When a defendant "moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."  United States ex rel. Kreindler & Kreindler v. United Tech. Corp., 985 F.2d 1148, 1155–56 (2d Cir. 1993) (internal quotations and citation omitted).  A district court properly dismisses a case for lack of subject matter jurisdiction where it "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Standing is an "essential aspect" of the limits of federal judicial power under Article III of the Constitution, which authorizes federal courts to decide only actual "Cases" or "Controversies."  Hollingsworth v. Perry, ___U.S. ___, ___, 133 S. Ct. 2652, 2661 (2013).  To have standing, a litigant must prove that:  (1) he or she "has suffered a concrete and particularized injury"; (2) the injury "is fairly traceable to the challenged conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision."  Id. (citing Lujan v. Defenders

of Wildlife, 504 U.S. 555, 560–61 (1992)). "To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way. He must possess a direct stake in the outcome of the case." Hollingsworth, 133 S. Ct. at 2662 (internal quotations and citation omitted).

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." Id. "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" Gunst v. Seaga, No. 05 Civ. 2626, 2007 WL 1032265, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)). Finally, when presented in satisfaction of the injury-in-fact requirement, any threatened injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." Coal. of Watershed Towns v. U.S. Envtl. Prot. Agency, 552 F.3d 216, 217 (2d Cir. 2008) (citation omitted).

## B. The Corporate Practice of Medicine Doctrine

The corporate practice of medicine doctrine prohibits corporations from practicing health care professions that require state licensure, such as medicine and dentistry. See e.g., Jim Moriarty & Martin J. Siegel, Survey of State Laws Governing the Corporate Practice of Dentistry 1 (2012), available at http://www.moriarty.com/content/documents/ml_pdfs/cpmd_4.10.12.pdf. The laws governing

the ban on the corporate practice of medicine are state laws, and vary throughout the country.[5]  Id.  Some states have laws expressly banning corporate practice, some have laws prohibiting non-dentists from employing dentists, and some have laws disallowing fee-sharing with unlicensed parties.  Id. at 4.

The corporate practice of medicine doctrine is codified in New York's Education Law, Business Corporation Law, and Limited Liability Company Law.  New York Education Law limits the practice of medicine to "a person licensed or otherwise authorized under this article."  N.Y. Educ. Law § 6522.  "Permitting, aiding or abetting an unlicensed person to perform activities requiring a license" is defined as professional misconduct.  Id. § 6509(7).  Anyone not authorized to practice under the law "who practices or offers to practice or holds himself out as being able to practice in any profession in which a license is a prerequisite to the practice of the acts" is guilty of a felony.  Id. § 6512; see also id. § 6602 ("Only a person licensed or otherwise authorized to practice under this article shall practice dentistry or use the title 'dentist.'").  Violations of section 6512 are prosecuted by the Attorney General in the name of the State.  Id. § 6514(2).

New York permits dentists to form professional corporations as long as the corporations are owned, operated, and controlled by licensed dentists.  N.Y. LLC Law §§ 1203, 1207; N.Y. Bus. Corp. Law §§ 1503(a), 1507, 1508.  As the Second Circuit explained, "because of the state's longstanding concern that the so-called 'corporate practice of medicine' could create ethical conflicts and undermine the quality of care afforded to patients, New York forbids non-physicians from employing physicians or controlling their

---

[5]  As the named plaintiffs in this case received dental services at Practices in eleven different states, this case involves at least eleven different corporate practice laws.

practices." State Farm Mut. Auto. Ins. Co. v. Mallela, 372 F.3d 500, 503 (2d Cir. 2004), certifying question; 3 N.Y.3d 687 (2004), accepting certified question; 4 N.Y.3d 313, answering certified question.

The Second Circuit noted that

> all professional service corporations ["P.C.s"] that are licensed to practice medicine must be owned and controlled only by licensed physicians. N.Y. Bus. Corp. Law §§ 1507, 1508. Additionally, P.C.s must file copies of their certificate of incorporation with the Department of Education and, from that Department, obtain certificates of authority to practice medicine. See N.Y. Educ. Law § 6507(4)(c). According to N.Y. Business Corporation Law § 1503, these certificates of incorporation must, inter alia, specify the names of all shareholders, directors, and officers of a P.C., and include documentation certifying that such individuals are licensed to practice medicine. Finally, the Attorney General is given the power to bring an action to dissolve a P.C. if the corporation "procured its formation through fraudulent misrepresentation or concealment of a material fact." N.Y. Bus. Corp. Law § 1101(a)(1).

Mallela, 372 F.3d at 503. Specifically, New York law dictates that

> [a] professional service corporation may issue shares only to individuals who are authorized by law to practice in this state a profession which such corporation is authorized to practice and who are or have been engaged in the practice of such profession in such corporation or a predecessor entity, or who will engage in the practice of such profession in such corporation within thirty days of the date such shares are issued.

See N.Y. Bus. Corp. Law § 1507(a). New York law does not require the owner of the practice to be physically present in each and every individual practice owned by the professional corporation.

## IV. DISCUSSION

### A. Defendants Aspen and Fontana's Motion to Dismiss

Defendants Aspen and Fontana move to dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) or alternatively for failure to state a claim under Rule 12(b)(6).

### 1. Subject Matter Jurisdiction

Aspen and Fontana contend plaintiffs lack standing under Article III of the Constitution because they have not alleged they were harmed by defendants in any medical or financial sense, and the unlicenced practice of medicine, standing alone, is not a legally cognizable harm under New York law. They argue that it is well settled that lack of a statutorily required license does not constitute an "injury" in and of itself. Further, they argue plaintiffs cannot enforce the corporate practice of medicine doctrine through a private suit.

Plaintiffs contend they have standing because they were injured when they paid money and other valuable consideration but did not receive what they were deceptively led to believe they were paying for—that is, dental services by an authorized provider. Plaintiffs insist that they are not seeking a private right of action for violation of New York's licensing statute. They argue that claims under the New York General Business Law are not barred simply because the allegedly deceptive conduct is based in part on a violation of a statute under which there is no private right of action.

First, it is undisputed that New York's licensing and business laws which prevent corporations from practicing dentistry do not confer a private right of action. See N.Y. Educ. Law § 6514(2) (violations of section 6512 are prosecuted by the Attorney General in the name of the State); see also N.Y. Bus. Corp. Law § 1101(a)(1) ("The attorney-general may

- 18 -

bring an action for the dissolution of a corporation . . . [if] the corporation procured its formation through fraudulent misrepresentation or concealment of a material fact.").  To avoid this, plaintiffs bring their claims under New York's consumer protection statute and common law and equitable theories.

However, plaintiffs lack standing as they fail to allege that they suffered an actual injury.  The named plaintiffs do not assert that they were harmed by the dental work performed by licensed dentists at the Practices, that they were billed for services they did not need or receive, or that they experienced any other legally cognizable injury.  They do not allege that they received improper dental treatment nor that defendants' dentists committed malpractice.  Instead, they received dental services for which they paid and therefore suffered no harm.  While the Amended Complaint refers to instances of "patients being overcharged and billed for dental services and/or products that they did not receive and/or authorize," Am. Compl. ¶ 53, it does not include a single example of a patient being so victimized nor allege any facts as to when or where this conduct took place.  Further, not one of the eleven named plaintiffs asserts that he or she was the victim of any price gouging, improper billing, or subject to any such misconduct.  As Aspen and Fontana point out, "[t]he Amended Complaint does not state what particular services or goods were allegedly overpriced, what billed services were allegedly not provided, or what products and services were allegedly provided without consent or authorization.  It simply alleges that these are inevitable consequences of [Aspen's] business model."  Defs.' Mem. of Law in Support, ECF No. 38–1, 5.

Finally, plaintiffs claim that numerous courts have found the misconduct alleged here to be deceptive and in violation of state consumer fraud statutes.  Plaintiffs' reliance on

recent cases asserting claims against similar dental service providers is misplaced. Plaintiffs submit a decision from a trial court in Denver County, Colorado. See Cohen Decl., Apr. 18, 2013, Ex. B, ECF No. 53–1 (decision in Morten v. Derose Mgmt., LLC, Case No. 12CV3650 (C.O. Dist. Ct. Denver Cnty., Mar. 7, 2013)). In that case, the parents of five minor children brought suit against entities that operated and managed dental clinics where the minors received dental treatment. The plaintiffs alleged that the defendants "implemented a scheme of overtreating children in order to increase revenues at the expense of their patients' health. Specifically, Plaintiffs claim that [some of the defendants] encouraged their dentist employees to perform unnecessary procedures, prevent patients' parents from accompanying them during treatment, and place children in restraints in order to shorten the duration of treatment (and thus be able to perform more treatments)." Id. at 2. Certain defendants moved to dismiss, inter alia, the claim alleging a violation of the Colorado Consumer Protection Act on the basis that plaintiffs were not consumers under the statute. The Court found, inter alia, that plaintiffs adequately stated a claim under that statute. However, Morten is less than persuasive as the plaintiffs in that case alleged concrete injuries—that the minor children were overtreated and received unnecessary procedures—while here, there are no allegations that the named plaintiffs received medically unnecessary treatment or were billed or paid for services that they did not receive.[6]

The parties have also submitted voluminous briefing regarding In re Small Smiles Litigation, the most recent decision having been rendered by the Appellate Division, Fourth

---

[6] It is also noted that the plaintiffs in Morten alleged a violation of Colorado Revised Statutes, section 12-35-116(1) which restricts the practice of dentistry to those who are professionally licensed. The plaintiffs claimed that the defendant corporation practiced dentistry in violation of the statute. The Court found that the plaintiffs had no cause of action for damages under that statute because it provides for administrative remedies.

Department.  In In re Small Smiles Litigation, three actions were commenced by the parents and legal custodians of thirty minors.[7]  See Cohen Decl., Apr. 18, 2013, Ex. A, ECF No. 53–1 (decision in In re Small Smiles Litigation, Index No. 11-2128 (N.Y. Sup. Ct. Onondaga Cnty., Aug. 23, 2012)).  The plaintiffs brought suit against various defendants who owned and/or managed various Small Smiles Clinics in New York State.  The plaintiffs alleged that the minors received inappropriate and unnecessary dental treatment at the clinics as part of a scheme that placed revenue generation as the top priority for the defendants' business at the expense of quality of dental treatment.  The plaintiffs alleged, inter alia, that to increase production, dentists were expected to perform unnecessary dental procedures, reduce time spent with each child without regard for the health and welfare of the child, and place children in restraints to perform dental work in order to speed up treatment and in an effort to meet and exceed the defendants' production goals.  Finally, the plaintiffs specifically alleged that all of the minors were subjected to unnecessary dental procedures and treatments that were below accepted standards of dental care.

The claims included, among others, causes of action based on common law fraud, battery, breach of fiduciary duty, violations of New York General Business Law sections 349 and 350, and negligence.  The misrepresentation alleged to support the claims under section 349 was that the defendants routinely induced patients at the clinics, including plaintiffs, to undergo inappropriate dental treatment by intentionally misrepresenting that the treatment was appropriate when the defendant dentists knew it was not.  It was alleged the minors were injured in the form of improper treatment.  Similarly, under section 350, the plaintiffs

---

[7]  The cases were coordinated for purposes of discovery in Onondaga County Supreme Court.  Kelly Varano was the plaintiff in one of these cases.

alleged the clinics advertised that they were legally authorized to provide dental care and would provide appropriate dental care when they knew that to be false. Again, it was alleged the minors were injured as a result of the improper treatment.

The defendants initially moved in Onondaga County Supreme Court to dismiss certain causes of action in the amended complaints. The motions to dismiss were denied in their entirety. See Cohen Decl., Ex. A. On appeal, the Appellate Division, Fourth Department modified the order and dismissed the fraud and breach of fiduciary duty causes of action. In re Small Smiles Litigation, 109 A.D.3d 1212, 1213 (N.Y. App. Div. 4th Dep't Sept. 27, 2013). The Court upheld the section 349 claim on the basis that plaintiffs "alleged a scheme whereby the individual dentists made fraudulent misrepresentations to parents and custodians to induce consent for dental procedures, resulting in harm to the subject children." Id. (emphasis added). However, with respect to the section 350 claim, the Court dismissed the claim against the individual defendants for whom it was not alleged that they were involved in any false advertising. Id. at 1213–14.

The case of guardian plaintiff Kelly Varano proceeded with a summary judgment motion. The Onondaga County Supreme Court denied the defendants' motion for summary judgment on the section 349 claim. Pls.' Notice of Supplemental Authority, Ex. A, ECF No. 59–1 (decision in In re Small Smiles Litigation, Index No. 11-2128 (N.Y. Sup. Ct. Onondaga Cnty., Aug. 14, 2013)). The Court found that "[t]he evidence raise[d] issues of fact regarding consumer-oriented conduct." Id. at 20.[8] Later, Varano's claims went to trial. On October 9,

---

[8] In a subsequent decision in a separate case, the Court denied summary judgment on individual guardian plaintiff Jason Montanye's section 349 claim for substantially the same reasons. See Pls.' Notice of Supplemental Authority, Ex. A, ECF No. 68 (decision in Montanye v. Forba Holdings, LLC, Index No. 11-2128 (N.Y. Sup. Ct. Onondaga Cnty., Apr. 14, 2014)).

2013, a jury rendered a unanimous verdict in favor of all defendants on all counts. See Defs.' Notice of Supplemental Authority, Ex. A, ECF No. 61–1 (trial transcript of Varano vs. Forba Holdings, LLC, Index No. 11-2128 (N.Y. Sup. Ct. Onondaga Cnty., Oct. 9, 2013)). However, following trial, the Onondaga County Supreme Court granted Varano's motion for a new trial due to apparent jury tampering. See Pls.' Resp. to Defs.' Notice of Supplemental Authority, Ex. A, ECF No. 63 (decision in Varano vs. Forba Holdings, LLC, Index No. 11-2128 (N.Y. Sup. Ct. Onondaga Cnty., Nov. 18, 2013)). On appeal, the Appellate Division, Fourth Department reversed the trial court's granting of a new trial and remitted the case to the Onondaga County Supreme Court to decide the plaintiff's motion following an evidentiary hearing. Varano v. Forba Holdings, LLC, 125 A.D.3d 1395 (N.Y. App. Div. 4th Dep't Feb. 6, 2015).

Most recently, the Appellate Division Fourth Department issued a decision in plaintiff Elizabeth Lorraine's suit. See In re Small Smiles Litigation, 125 A.D.3d 1531 (N.Y. App. Div. 4th Dep't Feb. 13, 2015). The Court affirmed the trial court's denial in part of a motion for partial summary judgment by the corporate defendants, as well as the summary judgment motions of two dentists. As it relates to this discussion, the Court upheld the denial of summary judgment on plaintiff's section 349 claim, concluding "that plaintiff's submissions raised issues of fact concerning whether the [corporate] defendants engaged in a scheme to place profits before patient care, which allegedly included fraudulent practices that impacted consumers at large beyond a particular dentist's treatment of an individual patient." Id.

While the plaintiffs here make similar claims as to those plaintiffs in In re Small Smalls Litigation, particularly the consumer fraud allegations against a corporate-owned chain of dental offices and allegations that the defendants acted to maximize profits by increasing

production per patient, the plaintiffs in In re Small Smalls Litigation alleged concrete injuries. Those plaintiffs alleged that the minor children were overtreated and received unnecessary procedures, including asserting claims for battery and malpractice. Here, there are no allegations that the named plaintiffs received medically unnecessary treatment or were billed or paid for services that they did not receive. While the legal theories asserted in the two cases are similar, the factual allegations are not.

Finally, plaintiffs cite Massachusetts v. Aspen Dental Management, Inc., No. 14-3997 (Mass. Sup. Ct., Suffolk Cnty.) to support the factual and legal basis for this action. In that case, the Attorney General for the Commonwealth of Massachusetts settled claims on behalf of Massachusetts consumers against Aspen and Aspen Dental Associates of New England, P.C. That case relates to a Massachusetts consumer protection statute, and was brought by the Massachusetts Attorney General. See Pls.' Notice of Supplemental Authority, Ex. A, ECF. No. 75. That case is irrelevant as to whether the plaintiffs here have standing and whether a private cause of action exists for violations of the corporate practice doctrine.

In sum, plaintiffs have failed to meet their burden on Aspen and Fontana's motion to dismiss. They have not alleged "facts that affirmatively and plausibly suggest that [they have] standing to sue." Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). They have not "suffered a concrete and particularized injury" that "is fairly traceable to the challenged conduct." Hollingsworth, 133 S. Ct. at 2661. For this reason, defendants Aspen and Fontana's motion to dismiss pursuant to Rule 12(b)(1) will be granted and the Amended Complaint will be dismissed in its entirety.

### 2. Failure to State a Claim

As plaintiffs fail to allege any concrete or particularized injury and therefore lack standing to bring this suit, there is no need to consider Aspen and Fontana's motion to dismiss pursuant to Rule 12(b)(6). Accordingly, their motion to dismiss on this ground will be denied as moot.

### B. The Holding Company Defendants' Motion to Dismiss

The Holding Company defendants move to dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2)[9] and for failure to state a claim under Rule 12(b)(6). As plaintiffs fail to allege any concrete or particularized injury and therefore lack standing to bring this suit, there is no need to consider the Holding Company defendants' motion to dismiss. Accordingly, their motion will be denied as moot.

### C. Amendment

Finally, although not made through a formal motion, plaintiffs request leave to amend. All defendants oppose and contend that plaintiffs already had a chance to cure the deficiencies addressed in the initial motions to dismiss, and filed an Amended Complaint attempting to do so.

While plaintiffs have not made a motion to amend nor complied with Local Rule of Practice 7.1(a)(4), which requires a party moving to amend a pleading to "attach an unsigned copy of the proposed amended pleading to its motion papers," that failure is not dispositive. However, an opportunity to amend is not required where the defects in the plaintiffs' claims are substantive rather than merely formal, such that any amendment would be futile. Cuoco

---

[9] ADMI Corporation (as its principal place of business is in Syracuse, New York) does not contest personal jurisdiction.

v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Pucci v. Brown, 423 F. App'x 77, 78 (2d Cir. 2011) (summary order).  Such is the case here.  Thus, plaintiffs will not be permitted to file another amended complaint.

## V.  **CONCLUSION**

Plaintiffs lack standing to bring this suit because they have not alleged they suffered any concrete and particularized injury.  Accordingly, subject matter jurisdiction is lacking and the Amended Complaint must be dismissed.

Therefore, it is

ORDERED that

1.  Defendants Aspen Dental Management, Inc. and Robert A. Fontana's motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part;

2.  Defendants Aspen Dental Management, Inc. and Robert A. Fontana's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is GRANTED;

3.  Defendants Aspen Dental Management, Inc. and Robert A. Fontana's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is DENIED as moot;

4.  Defendants ADMI Corporation; ADMI Holdings L.P.; Leonard Green & Partners L.P.; Green Equity Investors V, L.P.; Green Equity Investors Side V, L.P.; and LGP Smile Coinvest, LLC's motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim is DENIED as moot;

5.  The Amended Complaint is DISMISSED in its entirety; and

6.  The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  March 27, 2015
           Utica, New York.